# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**DAVID C. GORMAN,**<br><br>                **Debtor**<br>_____<br><br>**JOHN P. FITZGERALD, ACTING UNITED STATES TRUSTEE,**<br><br>                **Plaintiff**<br><br>**v.**<br><br>**DAVID C. GORMAN,**<br><br>                **Defendant** | **Chapter 7**<br>**Case No. 08-13736-FJB**<br><br><br><br><br><br>**Adversary Proceeding**<br>**No.08-1296** |

## MEMORANDUM OF DECISION

**INTRODUCTION**

In this adversary proceeding the United States Trustee (the "U.S. Trustee") objects to the receipt by debtor David C. Gorman (the "Debtor") of a discharge in this chapter 7 case. The bases for objection to discharge are 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4)(A). The court held a trial at which three witnesses testified. Those witnesses were John Desmond ("Desmond"), who is the chapter 7 trustee, Linda Rogers, a licensed CPA employed as a bankruptcy analyst in the U.S. Trustee's office, and the Debtor himself. In addition, in the parties' pretrial memorandum, they stipulated to certain facts that were set forth in eighty-two separate paragraphs. Further, the parties agreed to the admissibility of sixty-five documentary exhibits. The stipulated facts and exhibits essentially establish the Trustee's claim that the debtor failed to disclose property of the estate and that he made false oaths on his schedules and statement of financial affairs. Accordingly, the principal issue at trial was whether the Debtor made these

omissions and false statements with fraudulent intent.  Following are the findings of fact and

conclusions of law required by FED. R. BANKR. P. 7052.

**FACTS**

The Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of the

Bankruptcy Code on May 22, 2008 (the "Petition Date").  On the same day, the Debtor filed his

schedules of assets ("Schedules") and statement of financial affairs ("SOFA"), each of which he

signed under the penalties of perjury, and Desmond was appointed chapter 7 trustee.

The Debtor is well educated and experienced in business and finance.  He holds a

Bachelor of Science degree and a Masters degree, both in accounting.  He has worked as a

controller for four different companies.  In that role he has prepared financial statements for use

in the businesses.  He has also prepared a payroll and tax returns for corporate employees.

When not employed by a company, the Debtor has owned and operated a professional services

company that provides accounting and tax services to a variety of clients, both individuals and

businesses.  In all of these positions the Debtor either prepared financial reports and required

financial forms or he arranged for their preparation.  In short, and I find, the Debtor is financially

sophisticated.

In addition to his work in accounting and finance, the Debtor has been engaged in

numerous business ventures, principally in real estate development and investment.  At the time

the petition was filed, he owned equity interests in no fewer than ten closely-held corporations,

with those interests ranging from twenty to one hundred percent of the equity in the entity.  The

entities in which the Debtor had an ownership interest included the following (collectively

referred to as the "Operating Entities"):

1.   Expert Tax Solutions, Inc. ("ETS"), through which the Debtor provided tax
and accounting services;

2.   Gordon Realty Partners, LLC ("GRP"), which owned real estate
investments;

3.    D&C Realty Partners, LLC ("D&CRP"), which owned real estate investments;

4.    Boston Solar Living, Inc. ("BSL"), which sold passive solar energy systems; and

5.    69-71 Academy Street Realty  Partners, LLC ("69-71 ASRP"), which owned real estate investments.

Each of these entities continued to operate after the Petition Date.  The Debtor also owned interests in several non-operating entities (the "Non-Operating Entities"), mostly involved in real estate development.  Finally, the Debtor owned an interest in Gorman and Silvano Construction ("GSC"), a construction company that had ceased to operate before the Petition Date.

Several of the Operating Entities reported net operating income on contemporaneously filed tax returns for the years immediately preceding the Petition Date.  The Debtor maintained accounting information systems and prepared financial statements for the Operating Entities. Certain of the Operating Entities maintained web sites both before and after the Petition Date. Each of GRP, D&CP and 69-71 ASRP owned and operated apartment buildings in Fitchburg, Massachusetts.  Those entities were operating at a net loss immediately before the Petition Date but were mostly current on their mortgage payments; at most they were in technical default on their loan agreements, meaning that there were past due tax and water and sewer charges on the properties securing the loans, but there were no monetary defaults to the lenders.  BSL appears to have been operating at a loss on or immediately before the Petition Date.  Each of the real estate operating entities maintains an account at a federal credit union, and their rents were deposited into those accounts.  The Debtor had signing authority on two of those accounts.  The Debtor also prepared tax returns for each of the Operating Entities as well as for several of the Non-Operating Entities.

One Operating Entity, ETS, was the entity through which the Debtor operated his accounting practice.  In 2008, the year the petition was filed, the Debtor prepared at least 250 tax returns for clients of ETS.  According to a profit and loss statement prepared by the Debtor,

ETS had net income in the first half of 2000 in the amount of $10,307.74.  ETS maintained a checking account at a federal credit union, and the Debtor had sole check signing authority on the ETS checking account.

As noted above, the Debtor filed his Schedules and SOFA at the time he filed the Petition.  Schedule B, the schedule of personal property, at Question 13 directs the Debtor to disclose his "[s]tock and interests in incorporated and unincorporated businesses."  Question 14 seeks disclosure of "[i]nterests in partnerships or joint ventures."  In response to Question 13 the Debtor indicated that he had "None."  In response to Question 14 the Debtor disclosed his interest in one Non-Operating Entity, GSC, and he stated its value was "0.00."  The parties have stipulated that in response to Questions 13 and 14 the Debtor failed to disclose his ownership interests in GRP, D&CR, 69-71 ASRP, ETS, and BSL.

The SOFA seeks, among other things, disclosure of information regarding a debtor's businesses.  It defines "[i]n business" broadly, as including, for debtors who are individuals, any instance in which, in the prior six years, the debtor has been an officer, director, managing executive, or owner of five percent or more of the voting or equity securities of a corporation.  It also includes in its definition any instance in which the debtor is a partner or a sole proprietor or is self-employed full time or part time.  It expressly includes situations where the work is to "supplement income from the debtor's primary employment."  The SOFA at Question 18 requires a debtor to disclose the name, address, and nature of any such business.  The parties stipulate that the Debtor failed to disclose his ownership interests in GRP, D&CR, 69-71 ASRP, ETS, and BSL in response to Question 18.  The Debtor did disclose his interest in GSC.

Question 2 in the SOFA requests that the Debtor list bank accounts in which he has any interest.  As to bank accounts, the Debtor admitted that he used the ETS bank account at the credit union to pay personal expenses and that he made deposits to that account.  In fact, he paid his bankruptcy counsel from that account.  The Debtor agrees that he failed to disclose the ETS bank account in response to Schedule "B."  The U.S. Trustee argues that it should have

been disclosed because funds in the account were the debtors and being held for the debtor by ETS; Schedule B, in its initial instructions, expressly required the Debtor to list all of his assets, even those being held for him by another.[1]  In addition the Debtor admitted in the Pretrial Memorandum that at the time of his bankruptcy filing, he maintained a personal bank account at the Somerville Municipal Credit Union, which account was not disclosed in the Schedules and SOFA.

Ms. Rogers, the bankruptcy analyst called as a witness by the U.S. Trustee, testified that she reviewed the financial records of ETS, the wholly-owned entity that the Debtor used to operate his accounting practice.  She testified that ETS generated $18,000 in cash from April 2008 through December 2008 through its operations.

The Debtor testified at trial that he failed to disclose the existence of the Operating and Non-Operating Entities except GSC because, in his view, none of the entities had any equity or value.  The Debtor also conceded on cross-examination that he disclosed his interest in GSC even though it had no equity or value.  He explained that he failed to disclose the ETS checking account, as well as another account at Somerville Municipal Credit Union, because he determined that the accounts together had only slightly more than $2,000.00 in funds, which he viewed  as "immaterial."

He also emphasized at the trial that, although he has education and experience as an accountant, he has no experience in bankruptcy.  In fact, he suggested that his confusion and misunderstanding about what he had to disclose on his Schedules and SOFA was attributable to his accounting background, which he contends taught him to recognize assets only if they have economic value.  Finally, the Debtor testified that at the section 341 meeting, the first meeting of creditors, he disclosed the existence of several of the Operating and Non-Operating Entities.  He also says that he provided tax returns to Mr. Desmond that revealed his interests in

---

[1]  It states: "List all property of the debtor of whatever kind. . . .   If the property is being held for the Debtor by someone else, state that person's name and address[.]"

those entities.

On another note, the Debtor testified that at the time he was completing his Schedules and SOFA, he was highly distracted. The Debtor's parents, with whom he lived at the time he filed his petition, were both terminally ill, and he was their primary caretaker. This caused him great stress and worry. Thus, he maintains that he was unable to focus on properly completing the Schedules and SOFA so as to make the necessary disclosures, if in fact such disclosures were indeed necessary. I find that whatever distraction the Debtor may have suffered on the basis of his parents' illnesses had no affect on his decision not to disclose the omitted entities and positions.

The Debtor contends that he cured any deficiency in his disclosures when he attended the section 341 meeting of creditors and produced tax returns that listed the entities that he had failed to disclose. The evidence shows the following. A couple of days before the meeting of creditors, the Debtor provided a partial copy of his 2007 personal federal income tax return to Mr. Desmond. The return contained some information about the omitted entities. The Debtor supplied this tax return pursuant to 11 U.S.C.§ 521(e)(2)(A), which obligates a debtor to provide a copy of his or her most recent federal income tax return to the trustee. He did not also provide tax returns for the various entities and provided no additional information regarding those entities until that information was specifically requested by Mr. Desmond. It was also established at the trial that the Debtor failed to attend a Rule 2004 examination of the Debtor that Mr. Desmond had scheduled after the section 341 meeting itself, to make further inquiry about the omitted entities. On these facts, it appears that the only disclosure the Debtor made at the first meeting of creditors was that which he made by complying with his obligation to supply the tax return.

**POSITIONS OF THE PARTIES**

The Trustee argues that the Court should deny the Debtor's discharge because the Debtor made false oaths in his schedule "B," the schedule of personal property, at questions 2, 13, and 14 and in his SOFA at question 18 by failing to disclose estate property, namely his interests in the omitted entities and the two bank accounts.  The Trustee points out that the Debtor admitted in the Pretrial Memorandum that he failed to disclose his interests in GRP, D&CRP, 69-71 ASRP,  ETS, and BSL.  The Trustee points out that in the Pretrial Memorandum, the Debtor admitted that in personal income tax returns that he had filed shortly before he completed his Schedules and SOFA, he had reported income or losses related to many of the entities that he omitted from his bankruptcy filings.  This, he argues, establishes that the Debtor knowingly failed to disclose those entities in his bankruptcy filings.  As to bank accounts, the Trustee argues that the Debtor's failure to list the ETS bank account and the Somerville Municipal Credit Union Bank Account in response to Question 2 on Schedule "B" constituted a knowing failure to disclose.

The Debtor advances essentially four defenses to the Trustee's complaint.  First, he argues that he believed he only had to list entities in which he had an interest that had actual economic value and that the Trustee bears the burden of establishing that the entities he omitted had "substantial value."   Second, he states that he misunderstood the questions that were posed in the Schedules and SOFA.  Third, the Debtor argues that he cured any deficiency in his disclosures when he attended the 341 meeting and produced tax returns that listed the entities that he had failed to disclose.  And finally, as noted above, the Debtor says that his failures should be excused because, at the time he was preparing his bankruptcy disclosures, he was "distracted" by personal losses and challenges.

**DISCUSSION**

The Bankruptcy Code provides at 11 U.S.C. § 727(a) in relevant part as follows:

> (a) The court shall grant the debtor a discharge, unless -
>
>> (2) the debtor, with intent to hinder, delay or defraud a creditor or
>> an officer of the estate charged with custody of property under this
>> title, has transferred, removed destroyed, mutilated, or concealed,
>> or has permitted to be transferred, removed, destroyed, mutilated,
>> or concealed—
>>
>>> (B) property of the estate, after the date of the filing
>>> of the petition . . . [or]
>>
>> (4) the debtor knowingly and fraudulently, in or in connection with
>> the case—
>>
>>> (A) made a false oath or account[.]

11 U.S.C. § 727(a).  The U.S. Trustee argues that the court should deny the Debtor a discharge because he has established by a preponderance of the evidence that the Debtor has concealed property of the estate and has done so with the intent to hinder, delay, or defraud his creditors and the chapter 7 trustee.  11 U.S.C. § 727(a)(2)(B).  Alternatively, the U.S. Trustee argues that the court should deny the Debtor a discharge because he has established by a preponderance of the evidence that the Debtor made false oaths by failing to disclose estate property in his Schedules and SOFA.  11 U.S.C. § 727(a)(4)(A).

**False Oaths under § 727(a)(4)(A)**

I begin with the false oaths count under § 727(a)(4)(A).  The leading case in this Circuit on interpretation and application of § 727(a)(4)(A) is the case of *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir. 1987).  In *Tully*, the court set forth a two-part test: "the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact."  *Id*. at 110.  Once it reasonably appears that the debtor made a false oath, the burden shifts to the debtor to establish that he or she did not commit the offense or has a valid excuse for doing so.  *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974).  Nonetheless, the

ultimate burden of proof remains on the party objecting to discharge.  *Tully*, 818 F.2d at 110; *In re Burgess,* 955 F.2d 134, 136 (1st Cir. 1992).

While the statutory right to a discharge is to be liberally construed in favor of the debtor, the *Tully* court underscored that the reason for § 727 is to ensure that those who seek protection under the Bankruptcy Code do not play "fast and loose" with their assets or with the reality of their affairs.  *Tully* at 110.  "The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on the facts rather than fiction."  *Id*.  "Neither the trustee nor the creditors should be required to engage in a laborious tug of war to drag the simple truth into the glare of daylight."  *Id*. (citations omitted).

The Trustee has established, and the court finds, that the Debtor knowingly and fraudulently made false oaths on his Schedules and SOFA by failing to disclose his interests and positions in the Operating and Non-Operating Entities.  In the face of clear and unambiguous directions on the Schedules and SOFA calling for disclosure of the identities of his stock ownership in corporations, the Debtor failed to disclose the identity of several corporations in which he had an interest as of the Petition Date.  I find not credible the Debtor's testimony that, by virtue of his training as an accountant and the alleged lack of value of his interests in the omitted entities, he did not appreciate the need to disclose these entities in his schedules.  However, even if this testimony were true, he also inexplicably failed to disclose the corporate offices and ownership positions that he held in those entities, as required by the SOFA.  In fact, as of the Petition Date, the Debtor owned twenty percent of each of GRP, D&CRP and 69-71 ASRP, one hundred percent of ETS, and thirty percent of BLS, but he failed to reveal these interests.  The fact that the Debtor had recently identified his interests in many of these entities in his personal tax returns, coupled with his less than convincing testimony about this subject at the trial, establishes that his omission of these entities was knowing and intentional.  In addition, the Debtor failed to reveal that he held corporate offices and positions in

9

several of the Operating and Non-Operating Entities, which information was called for plainly and directly by the SOFA.  Again, the Debtor did not credibly establish that he was unaware of these positions and did not explain why he left them off of his SOFA.

I also find that failing to disclose these interests was material.  Several of these entities were operating as of the Petition Date.  The real estate entities owned apartment buildings and were not in financial default.  Although the real estate may have declined in value in the months and years in advance of the Petition Date, it nonetheless was the duty of the chapter 7 trustee to determine whether there was value in these interests for the estate, and he was denied that opportunity when the Debtor elected not to disclose them.  Similarly, the Debtor's interests in ETS and BLS should have been disclosed.  Although ETS is a professional services company offering only the services of the Debtor, disclosure of that entity could well have led to the identification of other assets, for example receivables, in which the estate may have had an interest.  And although BLS was no longer operating, the Debtor's interest in that entity may well have had value if that entity had any assets.  Again, it was the chapter 7 trustee's job to make a determination of the value of BLS, but he could not make that determination because its existence was not disclosed.

The Debtor responds that he decided not to disclose these interests because he felt they did not have any economic value and therefore nothing could be gained by disclosing their existence.  The Debtor argues that the failure to disclose such assets could not be material.  The Court rejects this position for a variety of reasons.  First, the Schedules and SOFA do not limit themselves to the disclosure of entities that have economic value.  Nor should they, because those that are relying on disclosure in the schedules and SOFA should have the ability to decide for themselves what value there is in the estate.  Second, this argument has been rejected by the courts in this district.  Most recently, when addressing a debtor's argument that his failure to disclose was immaterial, the First Circuit Bankruptcy Appellate Panel responded as follows: "[t]he standard to determine whether an omission is material is generally whether the 'subject matter

bears a relationship the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *McClure v. Cormier (In re Cormier)*, BAP No. MW 10-002 (1st Cir. BAP 2010), citing *In re Tully*, 818 F.2d at 111. The corporate interests and bank accounts that the Debtor failed to disclose in this case plainly involve the Debtor's business dealings, his estate, and his business transactions. Finally, in the *Tully* case the debtor disputed the value of certain of the assets that he failed to disclose, arguing that those assets had no value and were therefore not material. *Id*. at 111 n.4. The court responded that "valuation is not really the point." *Id*. "Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions[.]" *Mascolo*, 505 F.2d at 277-78. It follows that the Debtor's failure to disclose his business interests and bank accounts was material even if they had little current value. This is equally true of the Debtor's failure to identify his corporate positions and ownership rights in the SOFA. Again, disclosure of these positions and interests may have been the source of inquiry that could have led to additional assets or rights.

I also find that the Debtor's failure to disclose the existence of the omitted entities was done with fraudulent intent. Certain of these entities owned potentially valuable real estate. The Debtor admitted at trial that if the market recovers for such real estate interests, these entities will indeed be valuable and, depending on appraisals of value at the time of filing, may have current value. The Debtor testified that his sister was the other owner of the real estate in question and that he felt obligated to protect her interests in the real estate. From his testimony I conclude that he was plainly attempting to protect her by keeping these properties out of the bankruptcy proceeding, which he was not entitled to do.

As for the Debtor's excuse that he was distracted by his personal circumstances at the time he prepared the Schedules and SOFA, the Court cannot credit that excuse. Most, if not all, consumer debtors suffer from distraction when they file their bankruptcy petitions. The distractions suffered by the Debtor in this case, though different in kind from the ordinary

economic stresses affecting debtors in bankruptcy, nonetheless did not affect his deliberation

about which assets and positions to disclose.  His distraction did not cause him to omit his

assets and positions by inadvertence.  His distractions notwithstanding, the Debtor's omissions

from the Schedules and SOFA were knowing and deliberate, not inadvertent.  Here, the Debtor

says he failed to disclose certain business interests because he was distracted, but he did in fact

remember to disclose his interest in the GSC business.  That business, according to the Debtor,

had no value at the time he filed his case.  Thus, it is difficult to distinguish GSC from the many

entities that the Debtor failed to disclose, many of which held potentially valuable interests in real

estate.  Distraction under the circumstances of this case does not begin to excuse the Debtor's

failure to disclose multiple business interests that may have led to the discovery of valuable

assets.

In addition, the Debtor's two alleged excuses—(i) that he omitted these entities because

they had no value and (ii) that he omitted the entities because he was distracted—are

inconsistent with each other.  According to the first, he made a considered decision not to list the

entities; according to the second, he was too distracted to remember them or to recognize the

need to list them.  He has made no effort to reconcile the two.  As they are offered in tandem,

each is made suspect by the other.

Finally, the Debtor's argument that he cured his failure to disclose the aforementioned

information by revealing the omitted information at his first meeting of creditors, the so-called

"section 341 meeting," is not tenable.  The evidence shows that a couple of days before the

meeting of creditors, the Debtor provided a partial copy of his 2007 personal federal income tax

return to Mr. Desmond; and the return contained some information about the omitted entities.

The Debtor supplied this tax return pursuant to 11 U.S.C.§ 521(e)(2)(A), which obligates a debtor

to provide a copy of his or her most recent federal income tax return to the trustee.  He did not

also provide tax returns for the various entities and provided no additional information regarding

those entities until that information was specifically requested by Mr. Desmond.  It was also

established at the trial that the Debtor failed to attend a Rule 2004 examination of the Debtor that

Mr. Desmond had scheduled after the section 341 meeting itself, to make further inquiry about

the omitted entities.  In sum, I conclude that the Debtor's disclosures at the first meeting of

creditors were limited and, in effect, compelled by § 521(e)(2)(A) and not the kind of full and

voluntary disclosures that might tend to show that his omission of the entities and positions from

the Schedules and SOFA were not made with fraudulent intent.

From the evidence adduced, the Court may and does infer that, in making his numerous

false oaths as to the omitted entities and his positions with those entities, the Debtor acted

knowingly and fraudulently.  The evidence he has adduced in rebuttal is unavailing.  I conclude

by a preponderance of the evidence that the Debtor made his numerous false oaths with

knowledge of their falsity and intent to defraud.  The U.S. Trustee is therefore entitled to a

judgment of denial of discharge.

The above conclusion is based exclusively on the Debtor's false oaths as to the omitted

entities and as to the Debtor's positions with those entities.  The Court does not rely on the

alleged false oaths as to two checking accounts.  In view of the above conclusion, the court

deems it unnecessary to address the counts based on the checking accounts and to address the

U.S. Trustee's separate counts under § 727(a)(2)(B).

**CONCLUSION**

In light of the Court's determination that the U.S. Trustee has sustained his burden under

§ 727(a)(4)(A), the Court will enter a separate judgment denying the Debtor a discharge.

Date: September 15, 2010                      _____
                                             Frank J. Bailey
                                             United States Bankruptcy Judge